IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| OWEN M. GBORPLAY, No. Y21170, | ) ) ) |
| Plaintiff, | ) ) ) Case No. 17-cv-155-JPG |
| vs. | ) ) |
| SGT. BARNHILL, C/O JACKSON, FAIRLESS, NICKLES, PAYSLEE, SCUTEZ, BAREFIELD, JOHNS, and JOHN DOE, | ) ) ) ) ) |
| Defendants. | |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Owen M. Gborplay, a citizen of Liberia, filed his Original Complaint on February 13, 2017. (Doc. 1). At the time of filing, Plaintiff was a detainee in the Pulaski County Detention Center ("Pulaski"). Initially, Plaintiff was a federal Immigration and Customs Enforcement ("ICE") detainee awaiting deportation. (Doc. 15, p. 1). However, on January 5, 2017, Plaintiff was involved in an altercation with a Pulaski official and was charged with battery. On April 19, 2017, Plaintiff pleaded guilty to the charge and was sentenced to two years' imprisonment. Plaintiff was transferred to Menard Correctional Center ("Menard") on April 24, 2017 and is presently serving his sentence, on the battery charge, at Menard.

Plaintiff's constitutional claims relate to his treatment while housed in Pulaski. Plaintiff alleges officials at Pulaski subjected him to unconstitutional conditions of confinement,

1

excessive force, illegal strip searches, and were deliberately indifferent to his related medical needs. Plaintiff seeks monetary relief and injunctive relief in the form of medical care. This matter is presently before the Court for preliminary screening of Plaintiff's Third Amended Complaint (Doc. 15) pursuant to 28 U.S.C. § 1915A(a).

## Background

Plaintiff's Original Complaint was filed on February 13, 2017. (Doc. 1). According to the Original Complaint, on January 5, 2017, after an incident in the "B" pod housing unit Plaintiff was transferred to segregation where he was stripped naked, shackled and held for 24 hours. (Doc. 1, pp. 1-2). Plaintiff alleged he sustained injuries as a result of this incident, that Pulaski officials were deliberately indifferent to those injuries, and sought monetary damages in relation thereto.

On April 3, 2017, Plaintiff filed a Motion to Amend Complaint. (Doc. 5). The caption of the proposed amended complaint identified several Pulaski officials as defendants. However, the body of the proposed amended complaint only identified a single defendant – Pulaski County Detention Center. The proposed amended complaint did not include any claims pertaining to the January 5, 2017 incident described in the Original Complaint. Instead, the proposed amended complaint brought allegations, directed at the Pulaski County Detention Center, pertaining to unreasonable strip searches occurring between January and March of 2017. In connection with these claims, Plaintiff requested monetary damages.

On April 10, 2017, Plaintiff filed a second Motion to Amend Complaint. The caption of the second proposed amended complaint identified several Pulaski officials as defendants. However, the body of the proposed amended complaint only identified a single defendant – Pulaski County Detention Center Medical Department. The allegations in the second proposed

2

amended complaint focused, once again, on the January 5, 2017 incident described in the Original Complaint. However, all of the allegations were directed against the Pulaski County Detention Center Medical. Additionally, Plaintiff asserted facts that implicated ongoing and potentially serious health concerns. Specifically, Plaintiff alleged that, as a result of the January 5, 2017 incident, he was "suffering from sharp pain coming from under [his] heart and lack of breathing off and on throughout during the day." Plaintiff further alleged that he had requested medical treatment but had not yet been examined by a physician. In connection with these claims, Plaintiff sought only monetary damages.

On April 12, 2017, the Court granted leave to amend (Doc. 8) and Plaintiff's First Amended Complaint (Doc. 9) and Second Amended Complaint (Doc. 10) were filed. The Court then proceeded with a preliminary review of Plaintiff's Second Amended Complaint. (Doc. 8).[1] Plaintiff's Second Amended Complaint was dismissed without prejudice for failure to name a proper defendant. With respect to Plaintiff's alleged untreated medical needs, the Court specifically stated as follows:

> The Court is concerned with Plaintiff's ongoing health issues and takes his allegations very seriously. However, these matters cannot be addressed unless and until Plaintiff files a viable action. Further, to date, all of Plaintiff's pleadings have sought only monetary relief. To the extent that Plaintiff wishes to obtain and/or needs medical care during the pendency of this action, Plaintiff should file a separate motion for a TRO and/or a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. The motion should be filed in this action and not a

---

[1] Prior to reviewing Plaintiff's Second Amended Complaint, the Court explained as follows:

> The Court suspects that, when Plaintiff submitted his amended pleadings, Plaintiff intended to supplement rather than replace the claims in his original complaint. However, this type of supplementation is not permitted. An amended complaint supersedes the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). Accordingly, only the allegations in the Second Amended Complaint are presently before the Court. The allegations asserted in the Original Complaint (Doc. 1) and in the First Amended Complaint (Doc. 5) are void.

(Doc. 8, p. 4).

> separate or new action. In it, Plaintiff must set forth the specific request for relief,
> as well as the factual allegations that support the request.

(Doc. 8, p. 8).

Plaintiff was granted leave to file a Third Amended Complaint on or before May 11, 2017. Plaintiff timely filed a Third Amended Complaint on May 4, 2017. (Doc. 15). In a cover letter accompanying the Third Amended Complaint, Plaintiff indicated that, because of his recent transfer to Menard, he was unable to use the civil rights form provided by the Court.

**Preliminary Screening of Plaintiff's Third Amended Complaint**

Plaintiff's Third Amended Complaint is now subject to preliminary review pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the

*pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### **The Third Amended Complaint**

Plaintiff alleges that he arrived at Pulaski on December 1, 2016 as an ICE detainee. (Doc. 15, p. 1). On January 5, 2017, Plaintiff was involved in an incident in the B-Pod housing unit wherein he was accused of "spill[ing] liquid material on an officer." *Id.* Plaintiff contends that, at the time of the alleged incident, the officer was not present in the B-Pod housing unit. *Id.*

As a result of this incident, Plaintiff was taken to E-Pod segregation unit and placed in cell No. 5. *Id.* Plaintiff alleges that Jackson, Fairless, and Barnhill are the officials that placed him in cell No. 5. Plaintiff further alleges that Jackson, Fairless, and Barnhill stripped Plaintiff naked and restrained him with cuffs and shackles. (Doc. 15, p. 2). Plaintiff contends the restraints were around his legs, wrists, and stomach. *Id.* Plaintiff contends that he remained naked for approximately 30 minutes but remained in the restraints for approximately 24 hours. *Id.* Plaintiff contends the strip search was unjustified because Pulaski officials had no reason to suspect Plaintiff was concealing contraband. *Id.*

Several days after the incident, Plaintiff began experiencing major pain in his lung, sharp pains in his heart, and difficulty breathing. *Id.* Plaintiff alleges that he submitted several requests for medical treatment but, "up until now" he had not been treated. *Id.* He also submitted grievances that were ignored. *Id.* Plaintiff contends the ongoing pain is interfering with his ability to eat and sleep. He states that, after two months of requesting medical treatment, he received some of his medical forms back and observed that an unidentified nurse made a request to an unidentified physician (John Doe) to treat Plaintiff. However, the John Doe physician ignored Plaintiff's medical needs and failed to treat Plaintiff.

Plaintiff further alleges that he was charged with battery in connection with the January 5, 2017 incident. (Doc. 1, p. 2). Plaintiff had numerous court dates regarding the battery charge. (Doc. 15, pp. 2-3). According to Plaintiff, on each court date, Plaintiff was subjected to unjustified strip searches (strip searches were conducted "without any probable cause or reasonable suspicion I was concealing contraband"), in violation of his constitutional rights. (Doc. 15, p. 3). Plaintiff contends Barefield, Johns, Payslee, Nickles, and Scutez were responsible for the alleged strip searches. *Id.*

In his request for relief, Plaintiff states as follows: "Due to all these violations of my constitutional rights. I am seeking monetary damage in the amount of $900,000.00 and medical care until my case is settl[ed]." *Id*.

Plaintiff pleaded guilty to the battery charge on April 19, 2017 and was sentenced to two years imprisonment.[2] Plaintiff was transferred to Menard on April 24, 2017.[3] Plaintiff brings no allegations with regard to his medical treatment since his transfer to Menard. However, the Third Amended Complaint indicates that Plaintiff may be receiving medical treatment at Menard. (Doc. 15, p. 2) ("I made several medical request regarding my pain and suffering through a medical complaint form, *but up until now* I haven't been treated.") (emphasis added).

## **Discussion**

The Court finds it convenient to divide the *pro se* action into a single count. The parties and the Court will use this designation in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. Any other claim that is mentioned in the Complaint

---

[2] The Court obtained this information after reviewing publically available court records associated with Plaintiff's battery case in Pulaski County. The Court can take judicial notice of these records. *Hensen v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).
[3] The Court takes this information from IDOC's publically available website. The Court can take judicial notice of information on IDOC's official website. *Westefer v. Snyder*, 725 F.Supp.2d 735, 745 (S.D. Ill. 2010).

6

but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.

> **Count 1 –** Jackson, Fairless, and Barnhill subjected Plaintiff to unconstitutional conditions of confinement on January 5, 2017 in violation of the Fourteenth Amendment.
>
> **Count 2 –** Jackson, Fairless, and Barnhill subjected Plaintiff to excessive force on January 5, 2017 in violation of the Fourteenth Amendment.
>
> **Count 3 –** Defendants were deliberately indifferent to Plaintiff's medical needs following the January 5, 2017 incident.
>
> **Count 4 –** Jackson, Fairless, and Barnhill subjected Plaintiff to an unconstitutional strip search on January 5, 2017 in violation of the Fourth and Fourteenth Amendments.
>
> **Count 5 –** Nickles, Payslee, Scutez, Barefield, and Johns subjected Plaintiff to unconstitutional strip searches after court visits in violation of the Fourth and Fourteenth Amendments.

**Applicability of Fourteenth Amendment Standards**

The record indicates Plaintiff was a detainee at the time of the alleged constitutional violations. Accordingly, his civil rights claims arise under the Fourteenth Amendment and not the Eighth Amendment. *See Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000). Nonetheless, the Seventh Circuit has "found it convenient and entirely appropriate to apply the same standard to claims arising under the Fourteenth Amendment (detainees) and Eighth Amendment (convicted prisoners) 'without differentiation.' " *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 845 n.2 (7th Cir. 1999)). Accordingly, both standards are considered in evaluating Plaintiff's claims.

**Count 1 – Conditions of Confinement**

To succeed on a conditions of confinement claim, the plaintiff must establish both objective and subjective components. Under the objective test, deprivations to inmates must be

"extreme" and mere discomfort is not sufficient. *Hudson v. McMillian*, 503 U.S. 1, 8–9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). Under the subjective test, defendants must have acted with deliberate indifference, that is, defendants were aware of and disregarded an excessive risk to the inmate's health. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008).

Here, Plaintiff alleges that after the altercation in B-Pod, he was taken to a segregation unit and placed in a cell. At that time, he was stripped naked and restrained with handcuffs and shackles. Plaintiff remained without clothing for approximately 30 minutes and remained in restraints for 24 hours. The restraints were so tight that Plaintiff experienced pain in his chest and lungs, as well as difficulty breathing. Plaintiff contends his injuries are ongoing.

The duration of Plaintiff's restraint, standing alone, does not suggest a constitutional violation. *See Payette v. Hoenisch*, 284 F. App'x 348, 352 (7th Cir. 2008) ("Shackling a prisoner based on a valid penological reason for a short period of time ordinarily does not violate the constitution."); *Key v. McKinney*, 176 F.3d 1083, 1086 (8th Cir.1999) (prisoner who was restrained in handcuffs and shackles for 24 hours, making it more difficult for him to relieve himself, did not suffer a constitutional violation). However, open questions remain with regard to the penological justification for (1) restraining Plaintiff after he had been removed from the scene of the altercation and placed in a cell and (2) leaving Plaintiff naked for 30 minutes. Additionally, Plaintiff contends he was restrained in a manner that caused significant pain and difficulty breathing. These allegations, taken together, *may* implicate an actionable deprivation.

With respect to the subjective component, the Court finds that, at this stage, Plaintiff's general allegations that defendants were involved the alleged unconstitutional conditions of

confinement is sufficient to proceed. *See Antonelli*, 81 F .3d at 1429; *see also Reed McBride*, 178 F.3d 849, 853–55 (7th Cir .1999).

Accordingly, Count 1 shall proceed against Barnhill, Jackson, and Fairless to allow for further development of the record.

**Count 2 – Excessive Force**

Plaintiff alleges his shackles were so tight he experienced pain in his chest and lungs, as well as difficulty breathing. Plaintiff alleges these complications continue to plague him. Plaintiff's allegations are sufficient to survive preliminary review. *See Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (shackling inmate to hitching post was "obvious" Eighth Amendment violation if inmate's threat to guards' safety had abated); *Payne v. Pauley*, 337 F.3d 767, 774 (7th Cir. 2003) (reversing summary judgment on arrestee's Fourth Amendment claim of excessive force based in part on overly tight handcuffs).

Therefore, Count 2 shall be allowed to proceed against Barnhill, Jackson, and Fairless to allow for further development of the record.

**Count 3 – Deliberate Indifference to Medical Needs**

To state a claim for deliberate indifference to a serious medical need, a detainee must allege that he had a serious medical condition and that officials were deliberately indifferent to that condition. *E.g., Burton v. Downey*, 805 F.3d 776, 784 (7th Cir. 2015); *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014).

For screening purposes, Plaintiff has alleged the existence of an objectively serious medical condition. An objectively serious condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir.

2001). Factors that indicate a serious condition include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Here, Plaintiff alleges he experienced irregular breathing, as well as heart and lung pain that interfered with his ability to eat and sleep. These allegations are sufficient at the threshold stage.

For screening purposes, Plaintiff's Third Amended Complaint also sufficiently alleges that the John Doe physician acted with deliberate indifference. To be sure, "medical malpractice, negligence, or even gross negligence" by an official "does not equate to deliberate indifference." *Johnson v. Doughty*, 433 F.3d 1001, 1012-13 (7th Cir. 2006). That said, deliberate indifference can exist when an official fails to provide any treatment for a medical condition, *Gayton v. McCoy*, 593 F.3d 610, 623-24 (7th Cir. 2010), when an official persists with ineffective treatment for a medical problem, *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005), or when an official delays medical treatment or needlessly prolongs a prisoner's pain, *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012). Plaintiff alleges that notes in his medical records indicate Physician John Doe[4] was aware of Plaintiff's medical condition and requests for treatment but failed to provide any treatment.

Accordingly, Count 3 shall proceed as to John Doe to allow for further development of the record.

---

[4] Physician John Doe is the only Defendant that is specifically referenced with respect to Plaintiff's deliberate indifference claims.

**Strip Search Claims**

**Controlling Authority**

A strip search in prison may constitute cruel and unusual punishment, in violation of the Eighth Amendment. *See Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009). A strip search violates the Eighth Amendment when it is motivated by a desire to harass or humiliate rather than by a legitimate justification, such as the need for order and security. *Calhoun v. De Tella,* 319 F.3d 936, 939 (7th Cir. 2003). *See also King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015) ("where there is no legitimate reason for the challenged strip-search or the manner in which it was conducted, the search may 'involve the unnecessary and wanton infliction of pain' in violation of the Eighth Amendment.") (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Even when supported by penological justification, a search may still violate the Eighth Amendment if "conducted in a harassing manner intended to humiliate and cause psychological pain." *Mays*, 575 F.3d at 649. However, "not every psychological discomfort a prisoner endures amounts to a constitutional violation." *Calhoun*, 319 F.3d at 939.

Strip searches may also implicate an inmate's rights under the Fourth Amendment. Under the Fourth Amendment, the question is whether the search was reasonable:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Bell v. Wolfish,* 441 U.S. 520, 559 (1979). In conducting this analysis, courts give great deference to judgments of prison officials about matters of institutional safety and security. *See Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005). Nevertheless, the Fourth Amendment continues to protect some degree of privacy for convicted prisoners, at least when it comes to

bodily searches, although that protection is significantly lessened by the punitive purposes of prison and the very real threats to safety and security of prisoners, correctional staff, and visitors. *See Peckham v. Wis. Dep't of Corr.*, 141 F.3d 694, 697 (7th Cir. 1994). The Seventh Circuit has emphasized that "it is difficult to conjure up too many real life scenarios where prison strip searches of inmates could be said to be unreasonable." *Id*.

The Supreme Court has held that routine visual-strip searches of pretrial detainees, without individualized suspicion that a detainee was concealing contraband, are reasonable under the Fourth Amendment. *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington,* 132 S. Ct. 1510, 1523 (2012). However, the Supreme Court made clear that its opinion did not address searches in which detainees would be touched as part of the searches. *Id.* Relying on the Supreme Court's decision in *Florence,* the Seventh Circuit has held that the Fourth Amendment is only implicated when a plaintiff alleges an intrusion into the body. *King v. McCarty*, 781 F.3d 889, 900 (7th Cir. 2015).

**Count 4 – January 5, 2017 Strip Search**

The January 5, 2017 strip search was conducted after Plaintiff's altercation with a guard and upon Plaintiff's placement in segregation. With regard to the incident, Plaintiff alleges that Barnhill, Jackson, and Fairless escorted him to a segregation unit and stripped him naked. (Doc. 15, pp. 1-2). Plaintiff provides no further information regarding the incident. Plaintiff then alleges, Defendants "had no reasonable suspicion [Plaintiff] was concealing contraband, so they had no probable cause to invade my privacy [and] humiliate me in such [a] manner." (Doc. 15, p. 2). This allegation is not supported with any specific factual allegations.

12

Plaintiff's allegations are too conclusory to survive preliminary screening. He has done nothing more than provide a threadbare recital of the elements of a cause of action. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As such, this claim shall be dismissed without prejudice.

**Count 5 – Strip Searches Upon Returning From Court**

Plaintiff had numerous court visits between January 2017 and April 2017. Plaintiff contends that after each visit, he was strip searched by Nickles, Payslee, Scutez, Barefield, and/or Johns "without any probable cause or reasonable suspicion I was concealing contraband." (Doc. 15, p. 3). Plaintiff provides no further detail with regard to these strip searches.

As with Count 4, the allegations in Count 5 are too conclusory and vague to state a claim. Accordingly, Count 5 shall be dismissed without prejudice.

**Request for Injunctive Relief**

In his request for relief, Plaintiff seeks "medical care until [his] case is settled. The Court construes this as a request for injunctive relief, which is hereby **DENIED** without prejudice. The events giving rise to this action occurred at Pulaski and all of Plaintiff's allegations pertaining to lack of medical care involve deliberate indifference on the part of officials at Pulaski. However, Plaintiff is no longer housed at Pulaski. As set forth in the Third Amended Complaint, Plaintiff has been transferred to Menard. Plaintiff does not allege that he is being denied medical care at Menard. Further, the Complaint implies that Plaintiff is receiving medical treatment at Menard. (Doc. 15, p. 2) ("up until now I haven't been treated).

Considering the above, unless Plaintiff anticipates transferring back to Pulaski, his request for injunctive relief in this action is considered moot. "[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot." *Lehn v. Holmes*, 364 F.3d 862,

871 (7th Cir. 2004). Only if Plaintiff can show a realistic possibility that he would again be incarcerated at Pulaski under the conditions described in the Third Amended Complaint would it be proper for the Court to consider injunctive relief. *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (citing *Ortiz v. Downey*, 561 F.3d 664, 668 (7th Cir. 2009)). If Plaintiff is now being denied medical treatment for a serious medical need at a different institution, he may file a separate lawsuit to address that Eighth Amendment claim and request injunctive relief in that action.

### Identification of John Doe Physician

Plaintiff shall be allowed to proceed against the specified John Doe Physician. However, this defendant must be identified with particularity before service of the complaint can be made on him. Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Guidelines for discovery will be set by the United States Magistrate Judge.

In order to assist Plaintiff in identifying the proper defendant in this action, the Clerk shall be directed to reinstate Pulaski's current warden, Damon Acuff, as a defendant, for the sole purpose of identifying the unknown defendant through discovery. Once Plaintiff discovers the unknown defendant's name, Plaintiff shall file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the Complaint.

### Disposition

The Clerk is **DIRECTED** to terminate **NICKLES, PAYSLEE, SCUTEZ,**

**BAREFIELD,** and **JOHNS** as parties in CM/ECF.

The Clerk is **DIRECTED** to reinstate Pulaski's current warden, **DAMON ACUFF**, as a defendant, for the sole purpose of identifying the unknown defendant through discovery.

**IT IS HEREBY ORDERED** that **COUNT 4** and **COUNT 5** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNT 1** and **COUNT 2** are subject to further review against Defendants **JACKSON, FAIRLESS,** and **BARNHILL** and **COUNT 3** is subject to further review against Defendant **JOHN DOE**.

**IT IS ORDERED** that as to **COUNTS 1, 2,** and **3**, the Clerk of Court shall prepare for Defendants **JACKSON, FAIRLESS, BARNHILL,** and **ACUFF**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on Defendant **JOHN DOE** until such time as Plaintiff has identified him by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, including a plan for discovery aimed at identifying the unknown defendant with particularity. Further, this entire matter shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a

stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 11, 2017**

*s/J. Phil Gilbert*
**J. PHIL GILBERT**
**United States District Judge**